# Exhibit 2 - Ciatti Declaration

Exhibit 2
Page 23

# WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.®

ATTORNEYS AT LAW

8405 Greensboro Drive
Suite 100
McLean, Virginia 22102-5104
Telephone: 703-749-1000
Facsimile: 703-893-8029
www.wthf.com

Mark A. Sgarlata, Esq.
Direct Dial: 703-749-1000
Facsimile: 703-893-8029

April 6, 2011

**Via Hand Delivery and Federal Express**

Christine A. Varney, Esq.
Assistant Attorney General
Antitrust Division
Department of Justice
950 Pennsylvania Avenue, NW
Room 3109
Washington, D.C. 20530

Re: **Bank of America Settlement Agreement – December 7, 2010**

Dear Ms. Varney:

This firm represents Kinsell, Newcomb and De Dios, Inc. ("KND") with respect to a number of California school district advance refunding financing programs that began in the early 1990s. As described in more detail below, the fraudulent bidding practices and informal (and illegal) kickback agreements between Bank of America, N.A. ("Bank of America") and CDR Financial, f/k/a Chambers, Dunhill, Rubin & Co. ("CDR") as it relates to some of these financing programs has resulted in significant financial damage to KND. Among the damages suffered by KND was a $5 million payment to the Internal Revenue Services ("IRS") made on behalf of a number of California school districts to ensure that the refunding bonds issued by these school districts remained tax-exempt.

Beginning in the early 1990s, KND participated in twenty-six (26) advance refunding programs with a number of California school districts. As part of these advance refunding programs, and in order to mitigate an inefficiency in the market, an escrow agent would enter into an Escrow Reinvestment Agreement with an investment entity, such as Bank of America. On twenty-four (24) occasions, CDR acted as the independent broker responsible for collecting bids for the Escrow Reinvestment Agreements. Of the twenty-four (24) school district financings for which CDR was the independent broker, Bank of America won the right to enter into an Escrow Reinvestment Agreement with the escrow agent six (6) times.

Exhibit 2
Page 24

Christine A. Varney
April 6, 2011
Page 2

During inquiries by the IRS and the Securities and Exchange Commission ("SEC"), the IRS and SEC indicated to KND that Bank of America's and CDR's involvement in certain of the Escrow Reinvestment Agreements resulted in the initial scrutiny of the refunding programs. As a result of information learned from the IRS and SEC during these inquires, as well as media coverage of Bank of America's and CDR's participation in a national bid-rigging conspiracy in the municipal bond market, KND learned that Bank of America and CDR used the Escrow Reinvestment Agreements as a vehicle to perpetrate a fraud on KND (and other interested parties in the refunding program) and to further their national bid-rigging conspiracy. Specifically, it was suggested that in exchange for a "last look," Bank of America provided illegal kickbacks to CDR. This illegal kickback was accomplished through a provision of the Escrow Reinvestment Agreement. As part of this fraud, Bank of America falsely represented to KND (and other interested parties in the transaction) that it had not received any bidding advantage and that its bid price was not based on any formal or informal agreement with any other party to the transaction. CDR falsely certified that it did not receive funds in excess of $10,000.

Significantly, as a result of the IRS's initial inquiry of certain of the school district advance refunding programs underwritten by KND, KND was required to pay the IRS $5 million on behalf of the California school districts that participated in the advance refunding programs. As previously explained, the initial scrutiny of these advance refunding programs was a direct result of Bank of America and CDR's involvement in six (6) of the twenty-six (26) school refunding programs underwritten by KND. Notably, after each inquiry, KND was reassured that the refunding programs complied with the IRS requirements for tax-exempt bonds. Nonetheless, during a routine audit of one of the school district refunding programs, the IRS discovered evidence of bid-rigging between Bank of America and CDR and therefore heightened its scrutiny of the remaining twenty-six (26) advance refunding programs underwritten by KND. To protect the tax-exempt status of the bonds, and in turn the school districts, in June 2008, KND made a substantial payment to the IRS.

It is KND's position that the damages suffered by KND are a direct result of Bank of America's fraudulent and conspiratorial conduct and, as such, KND is entitled to restitution from Bank of America as an "Additional Eligible Counterparty" pursuant to the terms of the December 7, 2010 Settlement Agreement between Bank of America and a number of State Attorney Generals ("2010 Settlement Agreement"). Specifically, as part of the advance refunding program, the school districts entered into municipal bond derivative contracts that involved the "reinvestment of the proceeds of tax-exempt bond issues, . . . or bonds issued by or on behalf of . . . school districts." These municipal bond derivatives, provided by Bank of America to the various school districts between 1998 and 2003, were impacted by Bank of America's fraudulent and conspiratorial conduct and, as such, are "covered derivatives" pursuant to the terms of the 2010 Settlement Agreement. The school districts are "Municipal Bond Derivatives Counterparties," and are therefore "Additional Eligible Counterparites," inasmuch as the school districts entered into "one or more Covered Derivatives with BAC." KND, acting

Exhibit 2
Page 25

Christine A. Varney
April 6, 2011
Page 3

on behalf of the school districts (Additional Eligible Counterparties), paid the IRS to ensure the tax-exempt status of the refunding bonds. Accordingly, KND is entitled to the protections afforded by the 2010 Settlement Agreement.

To further explain our position on this issue, we believe a meeting between the Department of Justice and Kinsell, Newcomb & De Dios, Inc. would be helpful. I look forward to speaking with you regarding this issue.

Very truly yours,

WATT, TIEDER, HOFFAR
& FITZGERALD, LLP

Mark A. Sgarlata

cc: Jeff Kinsell, Kinsell, Newcomb & De Dios, Inc. (via email)
Michael J. Ciatti, King & Spalding LLP (via U.S. Mail)
Richard Blumenthal, Attorney General, State of Connecticut (via U.S. Mail)
Andrew M. Cuomo, Attorney General, State of New York (via U.S. Mail)
L. Daniel Morris, Jr., Chief Deputy Attorney General, State of Alabama (via U.S. Mail)
Kamala D. Harris, Attorney General, State of California (via U.S. Mail)
Pam Bondi, Attorney General, State of Florida (via U.S. Mail)
Lisa Madigan, Attorney General, State of Illinois (via U.S. Mail)
Derek Schmidt, Attorney General, State of Kansas (via U.S. Mail)
Douglas F. Gansler, Attorney General, State of Maryland (via U.S. Mail)
Martha Coakley, Attorney General, Commonwealth of Massachusetts (via U.S. Mail)
Bill Schuette, Attorney General, State of Michigan (via U.S. Mail)
Chris Koster, Attorney General, State of Missouri (via U.S. Mail)
Steve Bullock, Attorney General, State of Montana (via U.S. Mail)
Paula T. Dow, Attorney General, State of New Jersey (via U.S. Mail)
Catherine Cortez Masto, Attorney General, State of Nevada (via U.S. Mail)
Roy Cooper, Attorney General, State of North Carolina (via U.S. Mail)
Mike DeWine, Attorney General, State of Ohio (via U.S. Mail)
John Kroger, Attorney General, State of Oregon (via U.S. Mail)
William H. Ryan, Jr., Attorney General, Commonwealth of Pennsylvania (via U.S. Mail)
Alan Wilson, Attorney General, State of South Carolina (via U.S. Mail)
Greg Abbott, Attorney General, State of Texas (via U.S. Mail)

Exhibit 2
Page 26