David E. Nemeth, Bar No. 185005
dnemeth@wthf.com
Yanna Li, Bar No. 258330
yli@wthf.com
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
2040 Main Street, Suite 300
Irvine, CA 92614
Telephone:    949-852-6700
Facsimile:    949-261-0771

Attorneys for Plaintiff
KINSELL, NEWCOMB & DE DIOS, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINSELL, NEWCOMB & DE DIOS, INC., a California corporation<br><br>            Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national bank organized and existing under and by virtue of the laws of the United states of America and DOES 1 through 20, inclusive.<br><br>            Defendants. | Case No. 3:11-cv-00994-JAH-WMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KINSELL, NEWCOMB & DE DIOS, INC.'S OPPOSITION TO BANK OF AMERICA, N.A.'S MOTION TO DISMISS**<br><br>**Hearing Information:**<br><br>Date:    September 6, 2011<br>Time:    2:30 p.m.<br>Room:   Courtroom 11<br>Judge:   Honorable Judge John A. Houston |

///

///

///

///

///

///

///

///

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND
AUTHORITIES

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................1

II. STATEMENT OF FACTS ....................................................................2

III. LEGAL ARGUMENT............................................................................4

   A. KND ADEQUATELY ALLEGED ALL ELEMENTS OF A CLAIM FOR FRAUD ........................................................................................5

     1. KND Adequately Pled that Bank of America Misrepresented a Material Fact............5

     2. KND Adequately Pled that It Justifiably Relied on Bank of America's Misrepresentation............................................................6

     3. KND has Plausibly Alleged the Harm Caused by Bank of America's Misrepresentation............................................................7

   B. KND ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT .........................................................8

     1. KND Adequately Alleged that Bank of America Concealed Material Facts ...............9

     2. The Complaint Adequately Alleges that Bank of America Owed KND a Duty .........10

   C. KND ADEQUATELY STATES A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE .....................10

     1. KND Pled Sufficient Facts to Allege the Existence of Economic Relationships with the Probability of Future Economic Benefits .................................11

     2. KND Adequately Pled that Bank of America Knew of KND's Economic Relationship ...........................................................12

     3. KND's Complaint Adequately Alleges that Bank of America Was Certain or Substantially Certain that Its Actions Would Cause Interference With KND's Economic Relationships ................................................13

   D. KND HAS PROPERLY STATED A CLAIM FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE .....................15

     1. KND Adequately Pled that Bank of America Knew of KND's Economic Relationship ...........................................................15

     2. Bank of America Was Certain or Substantially Certain that Its Actions Would Cause Interference With KND's Economic Relationships .........................................15

     3. KND Adequately Pled Facts to Allege that Bank of America did not Act with Due CARE .............................................................15

       i. KND Pled Sufficient Facts to Allege the Existence of a Special Relationship Between Bank of America and KND ..............................................16

TABLE OF CONTENTS

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

## TABLE OF CONTENTS
### (continued)

Page

4.  KND's Complaint Stated Sufficient Facts to Allege that Bank of America's Negligence Caused the Interference With KND's Business Relationships ................. 18

E.  BANK OF AMERICA'S VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ........................................................................ 18

IV. CONCLUSION ................................................................................................................. 19

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

** 2:08-CV-03036-MCE-JFM

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009)........................................................................4

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2008)..........................................................................4

*Chaemleon Eng'r Corp. v. Air Dynamics, Inc.,*
   161 Cal. Rptr. 463 (Cal. Ct. App. 1980) ..........................................17

*Engalla v. Permanente Med. Group,*
   938 P.2d 903 (Cal. 1997)...............................................................5, 7

*J'Aire Corp. v. Gregory,*
   598 P.2d 60 (Cal 1979)...................................................................16

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (Cal. 2003) .....................................................11, 14

*Lange v. TIC Ins. Co.,*
   68 Cal. App. 4th 1179 (Cal. Ct. App. 1998). ...................................15

*LiMandri v. Judkins,,*
   52 Cal. App. 4th 326 (Cal Ct. App. 1997)........................................15

*Lovejoy v. AT7T Corp.,*
   119 Cal. App. 4th 151 (Cal. Ct. App. 2004) ......................................8

*Moss v. U.S. Secret Service,*
   572 F.3d 962 (2009)....................................................................4, 12

*N. Am Chem. Co. v. The superior Court of Los Angeles Cnty.,*
   59 Cal. App. 4th 764 (Cal. Ct. App. 1997) ......................................17

*Roddenberry v. Roddenberry,*
   44 Cal. App. 4th 634 (Cal. Ct. App. 1996) .......................................10

*Venhaus v. Shutlz,,*
   155 Cal. App. 4th 1072 (Cal. Ct. App. 2007) ...................................15

*Westside Center Assocs. v. Safeway Stores 23,*
   42 Cal. App. 4th 507 (Cal. Ct. App. 1987)...................................11, 12

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

TABLE OF AUTHORITIES

**TABLE OF AUTHORITIES**
(continued)

Page

**RULES**

Fed. R. Civ. P. 8 ...................................................................................................4

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 2, 4

TABLE OF AUTHORITIES

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

David E. Nemeth, Bar No. 185005
dnemeth@wthf.com
Yanna Li, Bar No. 258330
yli@wthf.com
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
2040 Main Street, Suite 300
Irvine, CA 92614
Telephone:   949-852-6700
Facsimile:   949-261-0771

Attorneys for Plaintiff
KINSELL, NEWCOMB & DE DIOS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINSELL, NEWCOMB & DE DIOS, INC., a California corporation<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national bank organized and existing under and by virtue of the laws of the United states of America and DOES 1 through 20, inclusive.<br><br>Defendants. | Case No. 3:11-cv-00994-JAH-WMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KINSELL, NEWCOMB & DE DIOS, INC.'S OPPOSITION TO BANK OF AMERICA, N.A.'S MOTION TO DISMISS**<br><br>**Hearing Information:**<br><br>Date:   September 6, 2011<br>Time:   2:30 p.m.<br>Room:  Courtroom 11<br>Judge:  Honorable Judge John A. Houston |

Plaintiff KINSELL, NEWCOMB & DE DOIS, INC. ("KND") submits this Memorandum of Points and Authorities in Opposition to BANK OF AMERICA, N.A.'s ("Bank of America") Motion to Dismiss KND's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted (the "Motion to Dismiss").

## I.   **INTRODUCTION**

KND's claim against Bank of America arises from Bank of America's tortuous and fraudulent participation in a bid-rigging scheme that ultimately forced KND into a five million dollar settlement with the Internal Revenue Service (the "IRS") and severely damaged its existing

and prospective business relationships. As a result of the damages it suffered, KND asserted claims against Bank of America for fraud, fraudulent concealment, intentional interference with economic advantage, negligent interference with economic advantage, and violation of the Racketeer Influence and Corrupt Organizations Act ("RICO").[1] In response to KND's Complaint, Bank of America moved this court to dismiss all five of the counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

Contrary to Bank of America's assertions, KND's Complaint relies upon legally-sufficient, non-conclusory, fact-based allegations that, coupled with reasonable inferences, are plausibly suggestive of a claim entitling KND to relief. In several instances throughout its Motion to Dismiss, Bank of America mischaracterizes the factual allegations made by KND, confuses the applicable standard of review for a motion to dismiss, and misstates California law related to the applicable count. Accordingly, Bank of America's Motion to dismiss should be denied, as KND has pled sufficient facts to state a claim for all counts.

## II. <u>STATEMENT OF FACTS</u>

As an underwriter, KND participated in twenty-four advance refunding financing programs with a number of California school districts (the "school districts") to raise money for school-related projects within the districts. Complaint ("Compl.") ¶¶ 5, 11. As part of these refunding transactions, KND purchased a large share of the refunding bonds from the school districts and then re-sold the bonds to institutional investors. <u>Id</u>. at ¶ 7. The proceeds from the sale of the refunding bonds were then used to purchase a portfolio of United States Treasury Obligations, which were held by an escrow agent and used to repay the original tax-exempt bond obligations. <u>Id</u>. at ¶¶ 8, 9.

The date that the escrow agent received interest and principal payments on the United States Treasury Obligations did not match the repayment of debt service on the original tax-exempt bonds. <u>Id</u>. at ¶ 9. As such, and at the direction of the bond issuer (the school district), the escrow agent entered into an Escrow Reinvestment Agreement with an investment entity (for example, Bank of America) for the right to invest the proceeds of the United States Treasury

---

[1] Currently, KND is seeking dismissal of the RICO count without prejudice.

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES

Obligations until the date of repayment on the original tax-exempt bonds. Id. In exchange for the right to temporarily invest the proceeds from the United States Treasury Obligations, the investment entity paid the school district a one-time upfront cash payment. Id.

Because the underlying bonds are tax exempt, the Federal Tax Code requires that prior to awarding the Escrow Reinvestment Agreement the School District is required to receive bids from at least three independent entities. Id. at ¶ 10. To comply with the Federal Tax Code, the school districts hired Chambers, Dunhill, Rubin & Co. ("CDR") to act as an independent broker. Id. As the broker, CDR was prohibited from providing Bank of America with any kind of bidding advantage or from receiving a fee or compensation in excess of the amount represented in the certificate of the broker. Id.

As the winning bidder on six of the twenty-four school district refinancing projects in which KND participated between 1993 and 2003, Bank of America represented in its Letters of Acceptance that no one provided "any additional information which induced [it] to bid a price higher than the price induced by the Requests for Bids" and that "[t]he price bid was determined without regard to any other formal or informal agreement with the issuer or any other person . . . ." Id. at ¶¶ 11-13. Contrary to the representations made by Bank of America (and without KND's knowledge), CDR provided Bank of America with a "last look" at the bids of the other bidding entities in exchange for an illegal kickback. Id. at ¶ 13. Based in part on the representations made by Bank of America in its Letter of Acceptance, KND provided a certification to the school districts' bond counsel. Id. at ¶ 14. Had KND known that Bank of America was paying CDR fees in excess of the amount allowed under the Federal Tax Code and in excess of the amount represented by Bank of America in its letter of Acceptance, KND would not have allowed the Escrow Reinvestment Agreements to be executed. Id. at ¶ 17. Specifically, KND would not have provided the underwriter's certificate to bond counsel for the School Districts. Id. at ¶ 16-18.

In 2003, KND received notice that the tax-exempt status of the refunding bonds was under audit by the Internal Revenue Service ("IRS"). Id. at ¶ 20. The purpose of the IRS's audit was to determine if the applicable provisions of the Federal Tax Code were followed when the refunding

MEMORANDUM OF POINTS AND AUTHORITIES

bonds were issued. Id. At the time, KND was told that the IRS investigations of these refunding programs was the result of Bank of America and CDR's involvement in certain of these transactions. Id. at ¶ 23.

As a result of the IRS's investigation into a number of these advance refunding programs, KND agreed to pay the IRS five million dollars to ensure the refunding bonds remained tax exempt. Id. at ¶ 32. Furthermore, as a result of the negative media attention into the bid-rigging conspiracy between Bank of America and CDR, KND lost financing projects with a number of entities. Id. at ¶¶ 28 29. Additionally, many of the bonds underwritten by KND sold in the secondary bond market as "Kinsell" bonds at a significant discount, which adversely affected KND's ability to market bonds on any other deal. Id. at ¶ 30.

## III.    LEGAL ARGUMENT

Fed R. Civ. Pro. 8 requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Specifically, to meet this standard and survive a 12(b)(6) motion to dismiss, the complaint must include sufficient factual allegations to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2008). Stated another way, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). This plausibility standard does not require the plaintiff to prove that the defendant is probably liable for the harm alleged. Id. Instead, it simply requires the plaintiff to allege sufficient facts and details that, if true, provide more than a mere possibility that the defendant acted unlawfully. Id; See Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (stating that "[i]n sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling a plaintiff to relief"). To determine if the plaintiff's claim sufficiently sets forth a claim for which relief can be granted, the court must accept as true all of the allegations contained in the complaint.

As pled, KND's Complaint contains sufficient factual allegations against Bank of America that, if accepted as true, state a claim that is plausible on its face. For each count

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 4 -

MEMORANDUM OF POINTS AND
AUTHORITIES

alleged, KND has set forth factual allegations that provide more than a mere possibility that Bank of America has acted unlawfully; therefore, Bank of America's Motion to Dismiss should be denied.

## A. KND ADEQUATELY ALLEGED ALL ELEMENTS OF A CLAIM FOR FRAUD[2]

To properly state a claim for fraud, KND must include factual content that, when coupled with reasonable inferences, plausibly suggests that Bank of America's fraudulent actions damaged KND. Under California law, the elements of fraud are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud; (d) justifiable reliance; and (e) resulting damages. Engalla v. Permanente Med. Group, 938 P.2d 903 (Cal. 1997). Contrary to Bank of America's improper assertion, KND has met the standard required to properly plead a cause of action for fraud in California.

### 1. KND Adequately Pled that Bank of America Misrepresented a Material Fact

In its Motion to Dismiss, Bank of America claims that KND failed to adequately plead that Bank of America misrepresented a material fact. Specifically, Bank of America (inaccurately) states that the alleged misrepresentation that forms the basis of KND's fraud claim is that CDR and Bank of America certified that Bank of America only paid $10,000 to CDR and that this certification was made through Bank of America's Letter of Acceptance. This depiction of the claim is a gross mischaracterization of the allegations in KND's complaint.

Bank of America's statement that the plain language of the Letter of Acceptance demonstrates that Bank of America did not make a false statement about fees paid to CDR is incorrect. In actuality, Bank of America had an agreement with CDR to pay CDR additional compensation in the future in exchange for a "last look" at the bids of its competitors. Compl. at ¶ 13. Thus, Bank of America clearly misrepresented to KND that it arrived at its bid without

---

[2] In its Motion to Dismiss, Bank of America only argues that KND failed to adequately plead the misrepresentation, justifiable reliance, and resulting damage elements of a claim for fraud. Accordingly, KND's Opposition to Bank of America's Motion to Dismiss only addresses those same elements.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 5 -

MEMORANDUM OF POINTS AND
AUTHORITIES

regard to any other agreement, as Bank of America actually arrived at its bid through an agreement with CDR to receive a "last look" at its competitors' bids. Id.

To that end, KND alleged that Bank of America represented that it did not receive a "last look" or enter into any formal or informal agreements regarding the price bid. Compl. at ¶¶ 10, 13. This claim is fully supported by the Letter of Acceptance, in which Bank of America represented that "[t]he price bid was determined without regard to any other formal or informal agreement with the issuer or any other person." Id. at ¶ 13. The representation by Bank of America was false, as Bank of America and CDR agreed, in exchange for an illegal kickback, that Bank of America would review the bids of the other bidding entities before submitting its bid. Id. at ¶¶ 10, 13. Thus, through its Letter of Acceptance, KND alleges that Bank of America misrepresented that it had not entered into a formal or informal agreement regarding the price of its bid.

The assertion that a senior employee at Bank of America has pled guilty to criminal conspiracy related to the rigging of bids in the municipal bond markets bolsters KND's allegation of Bank of America's misrepresentation. Id. at ¶ 26. Additionally, Bank of America's agreement with the SEC, the IRS, the Comptroller of Currency, and the twenty State Attorney Generals related to Bank of America's conduct in the municipal bond markets further supports KND's factual assertion that Bank of America made misrepresentations in its Letter of Acceptance. Id. at ¶ 27.

### 2. KND Adequately Pled that it Justifiably Relied on Bank of America's Misrepresentation

Bank of America claims that KND failed to allege sufficient facts to allow one to draw the reasonable inference that KND justifiably relied on Bank of America's alleged misrepresentation. Specifically, Bank of America inaccurately asserts that KND failed to state how it would have prevented the Escrow Reinvestment Agreement from being signed. Additionally, Bank of America contends that KND failed to allege that KND failed to state that it relied upon Bank of America's Letter of Acceptance in providing its underwriter's certificate to bond counsel. Despite Bank of America's erroneous assertions, KND adequately pled that it justifiably relied on

Bank of America's misrepresentations with respect to the bidding advantage that Bank of America received.

To establish justifiable reliance, a plaintiff need only show that the misrepresentation was material and that reliance can be inferred from the misrepresentation. Engalla, 938 P.2d at 919. A misrepresentation is considered material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. Id. (citing the Rest.2d Torts § 538, subd. (2)(a)). Accordingly, to properly allege justifiable reliance, a plaintiff must state non-conclusory facts that, combined with reasonable inferences, plausibly suggest that the misrepresentation was material.

In its Complaint, KND asserts that it justifiably relied, or rather attached importance to Bank of America's Letter of Acceptance. Specifically, KND asserted that it would not have permitted the Escrow Reinvestment Agreement to be signed, "*and KND would not have provided its underwriter's certificate to bond counsel or to underwrite the bond if it had known of Bank of America's Misrepresentation.*" Compl. ¶ 40. Accordingly, KND essentially alleges that it would have prevented the execution of the Escrow Reinvestment Agreement by not providing its underwriter's certificate, as the certificate that KND provided to bond counsel made the same material representations that Bank of America fraudulently made to KND. Id. at ¶¶ 39, 40. Had KND known that CDR was providing Bank of America with a "last look," it never would have provided the school districts' bond counsel with its underwriter's certificate. Id. Even if KND still would have provided the school districts' bond counsel with the underwriter's certificate if it knew of the misrepresentations (which is extremely unlikely), KND would attach significant importance to the existence of the agreement between Bank of America and CDR for a "last look" at the bids of Bank of America's competitors. Thus, KND's Complaint asserts sufficient factual allegations related to its justifiable reliance to support a claim for relief that is plausible on its face.

///

///

MEMORANDUM OF POINTS AND
AUTHORITIES

3.     **KND has Plausibly Alleged the Harm Caused by Bank of America's Misrepresentation**

Bank of America also asserts that KND failed to plausibly allege that Bank of America's representations caused any of the damages KND suffered. In fact, KND made several factual allegations that, when coupled with reasonable inferences, plausibly suggest that the misrepresentations made by Bank of America resulted in damages and loss of business to KND.

As alleged in its Complaint, KND's asserts that it would not have settled with the IRS for five million dollars and that it would not have lost current and future business is more than plausible. KND, as the underwriter and relying on Bank of America's Letter of Acceptance, made representations to the school districts that the bidding procedures for the Escrow Reinvestment Agreements complied with the Federal Tax Code. Id. at ¶¶ 38 - 40. As adequately alleged by KND, the IRS's discovery that Bank of America and CDR conspired to rig the bids on the Escrow Reinvestment Agreements, forced KND into a five million dollar settlement with the IRS to preserve the tax-exempt status of the bonds. Id. at ¶ 41 In light of KND's settlement with the IRS and the negative media coverage, several other entities either decided to stop doing business with KND or would no longer consider doing business with KND. Id. at ¶¶ 28 – 30, 42. If the factual assertions made by KND are taken as true, the harms alleged by KND plausibly suggest a claim entitling KND to relief.

B.     **KND ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT**

To survive Bank of America's Motion to Dismiss, KND's Complaint must include non-conclusory factual content and reasonable inferences from the content to plausibly suggest that Bank of America is liable for fraudulent concealment. In California, the elements of a cause of action for fraud based on concealment are: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the

MEMORANDUM OF POINTS AND
AUTHORITIES

concealment or suppression of the fact, the plaintiff must have sustained damage. <u>Lovejoy v.</u> <u>AT&T Corp.</u>, 119 Cal. App. 4th 151, 157 (Cal. Ct. App. 2004).

### 1. KND Adequately Alleged that Bank of America Concealed Material Facts

In its Motion to Dismiss, Bank of America states that KND failed to adequately allege that Bank of America concealed a material fact. A review of KND's Complaint, however, suggests otherwise. In fact, KND makes multiple non-conclusory, fact-based allegations about the material facts that Bank of America concealed. First, KND alleges that Bank of America concealed that CDR provided it with information that induced it to bid a price higher than it would have had Bank of America not been given a "last look." Compl. at ¶¶ 13, 43. Second, KND alleges that Bank of America concealed that it determined its bid price pursuant to an agreement with CDR. <u>Id</u>. Third, KND alleges that Bank of America concealed that CDR provided a "last look" at the bids of the other bidding entities. <u>Id</u>. at ¶¶ 12, 44. Fourth, KND alleges that Bank of America concealed that it surreptitiously inserted a clause into the Ecrow Reinvestment Agreement, which allowed Bank of America to pay CDR fees greater than the amount allowed ($10,000) by the safe harbor provisions of the tax code. <u>Id</u>. at ¶¶ 14, 46.

Remarkably, Bank of America's Motion to Dismiss only addresses KND's claim that Bank of America concealed that the Escrow Reinvestment Agreement allowed for payments to CDR in amounts greater than $10,000, while completely ignoring KND's other allegations of concealment. These other allegations of concealment along with KND's assertions about Bank of America's payments to CDR in excess of $10,000 set forth non-conclusory, fact-based allegations that plausibly suggest a claim against Bank of America. Thus, KND pled sufficient facts to adequately allege that Bank of America concealed a material fact.

Bank of America also asserts that KND's claim that Bank of America concealed "the effect" of Section 6.10 of the Escrow Reinvestment Agreement does not support its cause of action because the "effect" of a contractual provision is not "a fact" upon which a fraud claim can be premised.[3] Despite this assertion, Bank of America was required to disclose additional facts

---

[3] The applicable section of the Escrow Reinvestment Agreement is actually 6.09. The Complaint

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND
AUTHORITIES

which materially qualify the facts disclosed or which render the disclosure likely to mislead. Roddenberry v. Roddenberry, 44 Cal. App. 4th 634, 667 (Cal. Ct. App. 1996). Accordingly, the fact that Section 6.09 of the Escrow Reinvestment Agreement allows Bank of America to pay CDR additional amounts at some future time does not relieve Bank of America from the duty to disclose additional facts that materially qualify that representation. Thus, KND alleges that Bank of America should have disclosed that the Escrow Reinvestment Agreement allowed CDR to receive payments greater than the amount permitted by the Federal Tax Code and jeopardize the tax-exempt status of the bond. Compl. at ¶¶ 45, 46.

### 2. The Complaint Adequately Alleges that Bank of America Owed KND a Duty

In its Motion to Dismiss, Bank of America states that KND failed to allege the required duty that Bank of America owed to KND. Bank of America's position that KND failed to allege that it had a duty is almost untenable. KND directly asserted that Bank of America had a duty to disclose the effect of the provisions to both KND and all other parties. Id. In contrast to Bank of America's assertion that it had no duty to disclose that it was part of an illegal big-rigging scheme, Bank of America had a duty to disclose additional facts that materially qualify the facts disclosed. Roddenberry, 44 Cal. App. 4th at 667. The fact that Bank of America's representations in the Letter of Acceptance led KND to believe that the bidding procedures complied with the Federal Tax Code bolsters this argument. Compl. at ¶ 12-14, 47. Furthermore, the reasonable inferences from the content of KND's claim plausibly suggest that Bank of America owed KND a duty to disclose its arrangement with CDR that provided Bank of America with a "last look" at the bids of the other bidding entities. Thus, KND adequately pled a claim for fraudulent concealment.

### C. KND ADEQUATELY STATES A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

To state a cause of action for intentional interference with prospective economic advantage, KND must allege that: (1) KND's economic relationship with a third party, with the

inaccurately identifies it as Section 6.10.

MEMORANDUM OF POINTS AND AUTHORITIES

probability of future economic benefit to the plaintiff; (2) Bank of America had knowledge of KND's relationships; (3) intentional acts on the part of Bank of America designed to disrupt KND's relationships; (4) actual disruption of KND's relationships; and (5) economic harm to KND proximately caused by the acts of Bank of America. <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1153. As KND adequately alleges each of these elements, Bank of America's Motion to Dismiss should be denied.

       **1.**     **KND Pled Sufficient Facts to Allege the Existence of Economic Relationships With the Probability of Future Economic Benefits**

Bank of America argues that KND failed to allege sufficient facts regarding its relationships with Riverside County/Palm Desert Joint Power Authorities, Oceanside Mobile Home Park, Laguna Vista Multifamily Housing Authority, and the City of Stockton. To support its argument that KND failed to allege sufficient facts, Bank of America played with semantics by asserting that KND used unclear language about its prospective economic relationships. In making these arguments, Bank of America improperly places great significance on the court's holding in <u>Westside Center Assocs. v. Safeway Stores 23</u>, 42 Cal. App. 4th 507 (Cal. Ct. App. 1987). In <u>Westside Center Assocs.</u>, the court concluded that a claim for intentional interference with prospective economic relationships that relies on relationships with an unidentified member of a future market fails to demonstrate a reasonable probability of future economic advantage. <u>Id.</u> at 529-30.

To recover for the intentional interference with an economic advantage, a plaintiff must prove "the probability of future economic benefit to the plaintiff." <u>Westside Center Assocs.</u>, 42 Cal. App. 4th at 522. Accordingly, to withstand a 12(b)(6) motion to dismiss, KND must allege sufficient non-conclusory factual content, that when coupled with reasonable inferences from the content, plausibly suggests the probability of future economic benefit to the plaintiff.

Bank of America's argument that KND failed to allege sufficient facts rgarding its economic relationships is misguided. Unlike in <u>Westside Center Assocs.</u>, KND specifically identified the existing relationships that were likely to yield economic benefit. Compl. at ¶¶ 28, 29. In fact, KND stated that it "lost financing projects with Riverside County/Palm Desert Joint

MEMORANDUM OF POINTS AND AUTHORITIES

Power Authority, Oceanside Mobile Home Park, Laguna Vista Multifamily Housing Authority, and the City of Stockton, and was prohibited from bidding work with the City of Chula Vista, the Orange County School District, the City of San Marcos, and the San Marcos School District." Id. at ¶ 28. KND alleges that its expectation of economic benefit was far more than speculation. In fact, KND claims that these relationships were almost certain to yield the desired benefit, as KND was initially hired to underwrite bonds on financing projects for a number of the entities identified in the Complaint. Id. at ¶ 29. Accordingly, KND alleged sufficient facts to plausibly establish economic relationships that contained the probability of future economic benefit.

Additionally, Bank of America confuses the standard of review applicable to a motion to dismiss with the standard for reviewing a decision on the merits. Specifically, in its Motion to Dismiss, Bank of America cites to Westside Center Assocs. 42 Cal. App. 4th at 519 (noting the standard of review was "whether the proffered facts, if proven at trial, would support a verdict for [Westside Center Associates], i.e., whether there was substantial evidence to support WCA's claim"). The court in Westside Center Assocs., however, was reviewing a lower court's ruling on the merits of the dispute. Id. As previously stated, to survive a motion to dismiss, KND's non-conclusory, factual allegations and the reasonable inferences from those allegations must be plausibly suggestive of a claim entitling KND to relief. Moss, 572 F.3d at 969. The standard is not "whether there was substantial evidence." Accordingly, Bank of America erroneously relies on the court's determination in Westside Center Assocs. KND's Complaint makes sufficient factual allegations about KND's economic relationships that, if true, provide more than a mere possibility that the defendant acted unlawfully.

### 2. KND Adequately Pled that Bank of America Knew of KND's Economic Relationships

In its Motion to Dismiss, Bank of America claims that KND failed to allege sufficient facts to show that Bank of America knew of KND's economic relationships. Specifically, Bank of America incorrectly asserts that KND's sole allegation against Bank of America was conclusory, as it simply alleged that "Bank of America and CDR were aware that a false certification would call into question the tax-exempt status of the bonds. . . ." Motion to Dismiss

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 12 -

MEMORANDUM OF POINTS AND
AUTHORITIES

at p. 16.

In contrast to Bank of America's assertion, KND alleged sufficient facts that, if true, plausibly suggest that Bank of America had actual knowledge of the relationships with which it interfered. Compl. at ¶¶ 10, 26, 27, 52. KND is not required to prove that Bank of America had actual knowledge of its economic relationships. In fact, "[it] is not necessary to prove actual knowledge of an economic relationship; it is enough to show that the defendant had knowledge of facts which, if followed, would have led to the complete disclosure of the contractual relations and the rights of the parties." 44B AM. JUR. 2D Interference § 13 (2007).

Again, Bank of America misstates the standard of review. KND is not required to allege sufficient facts to *show* that Bank of America knew of the relationships with which it allegedly interfered. Instead, KND is required to allege sufficient facts that, when coupled with the reasonable inferences that stem from those allegations, plausibly suggest that KND is entitled to relief. Despite Bank of America's claim that it was unaware of KND's economic relationships, Bank of America participated in a number of the refinancing programs, and, in fact, was the winning bidder on six of the Escrow Reinvestment Agreements with the school districts. Compl. at ¶ 11. KND's relationships with these school districts and the entities identified in the Complaint are some of the very relationships that KND alleges that Bank of America interfered. Id. at ¶¶ 28, 29. Bank of America cannot possibly claim that KND failed to allege that Bank of America knew of these economic relationships when the complaint specifically identifies the relationships, claims that Bank of America participated in the bidding process for many of the Escrow Reinvestment Agreements, and then specifically states that Bank of America was aware of these relationships. Id. at ¶¶ 28, 29, 52. Furthermore, as inferred from KND's Complaint, Bank of America was a frequent bidder on bonds underwritten by KND and was generally aware of KND's economic relationships in the bond market. See Compl. at ¶ 11. Accordingly, KND has alleged sufficient facts regarding Bank of America's knowledge of KND's business relationships to support a claim for intentional interference with prospective economic advantage.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 13 -

MEMORANDUM OF POINTS AND
AUTHORITIES

**3.     Bank of America Was Certain or Substantially Certain that Its Actions Would Cause Interference With KND's Economic Relationships**

Bank of America asserts that KND failed to allege sufficient facts that Bank of America engaged in wrongful conduct designed to disrupt KND's economic relationships, or that Bank of America knew that the interference was certain or substantially certain to occur as a result of its actions. However, when considered with the reasonable inferences that arise from the factual allegations related to Bank of America's intent to cause harm, KND's Complaint plausibly suggest a claim that entitles KND to relief for intentional interference with prospective economic advantage.

The element of specific intent for a claim for intentional interference with prospective economic advantage is satisfied when the actor desires to bring it about or if the actor knows that interference is substantially certain to occur as a result of its action. <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 63 P.3d at 952. In other words, "[i]f the actor knows that the consequences are certain, or substantially certain, to result from his act, and he still goes ahead, he is treated by the law as if he had in fact desired to produce the result." <u>Id</u>. (relying on the RESTATEMENT (SECOND) OF TORTS § 8A). In fact, if the means used to bring about the interference are innately wrongful, a purpose to produce the interference may not be necessary. <u>Id</u>. (relying on the RESTATEMENT (SECOND) OF TORTS § 8A). Accordingly, the fact that Bank of America knew that it was engaged in unlawful conduct that was innately wrongful excuses KND from having to allege that Bank of America designed to disrupt KND's economic relationship.

As alleged by KND in its Complaint, it is plausible that Bank of America acted with the knowledge that its actions were certain or substantially certain to interfere with KND's economic relationship. As stated by the Supreme Court of California, it is absurd to allow Bank of America to escape liability knowing that, if discovered, its unlawful conduct was substantially certain to cause significant harm to KND's economic relationships. See <u>Korea Supply Co.</u>, 63 P.3d at 956 (finding that it would be "absurd and unfair" to find "[a] defendant who engaged in an unlawful act knowing that it would harm the plaintiff's business interest to escape liability if the defendant

MEMORANDUM OF POINTS AND
AUTHORITIES

acted with the purpose of furthering its own interest, rather than specifically harming the plaintiff's interest").   Accordingly, KND's Complaint alleges sufficient facts regarding Bank of America's intent to support a claim for intentional interference with prospective economic advantage.

## D. KND HAS PROPERLY STATED A CLAIM FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

To properly establish a claim for negligent interference with prospective economic advantage, the plaintiff must allege: (1) an economic relationship existed between the plaintiff and a third party that contained a reasonably probable future economic benefit or advantage to the plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that, if it did not act with due care, its actions would interfere with this relationship and cause the plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; (4) such negligence caused damages to the plaintiff in that the relationship was actually interfered with or disrupted and the plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.  Venhaus v. Shultz, 155 Cal. App. 4th 1072, 1078 (Cal. Ct. App. 2007).  A claim for negligent interference with an economic relationship arises only if Bank of America owed KND a duty of care.  Lange v. TIC Ins. Co., 68 Cal. App. 4th 1179, 1187 (Cal. Ct. App. 1998) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 348 (Cal. Ct. App. 1997)).

### 1. KND Adequately Pled that Bank of America Knew of KND's Economic Relationships

As described in Section C, KND pled sufficient facts to support its assertion that Bank of America knew of KND's economic relationships.

### 2. KND Adequately Pled that Bank of Ameica Knew or Should Have Known KND Would Lose Future Economic Benefits

Likewise, as described in Section C, KND pled sufficient facts to support its assertion that Bank of America knew or should have known that KND would lose the future benefits that result from its economic relationships.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 15 -

MEMORANDUM OF POINTS AND
AUTHORITIES

### 3. KND Adequately Pled Facts to Allege that Bank of America Did Not Act With Due Care

Bank of America's Motion to Dismiss states that KND failed to properly allege that Bank of America owed a duty of care to KND. Specifically, Bank of America improperly asserts that KND failed to allege sufficient facts to support the existence of a special relationship. Despite Bank of America's misplaced assertions, KND pled sufficient facts to establish the existence of a special relationship between KND and Bank of America.

### i. KND Pled Sufficient Facts to Allege the Existence of a Special Relationship Between Bank of America and KND

A duty may arise from "the general character of the activity in which the defendant is engaged, the relationship between the parties or even the interdependent nature of human society." J'Aire Corp. v. Gregory, 598 P.2d 60, 62 (Cal. 1979). Specifically, where a special relationship exists between the plaintiff and the defendant, the plaintiff may recover for loss of expected economic advantage due to the defendant's negligent conduct. Id. at 63. Courts in California examine six criteria to determine if a special relationship exist. Those criteria are: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the forseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. N. Am. Chem. Co. v. The Superior Court of Los Angeles Cnty., 59 Cal. App. 4th 764, 782 (Cal. Ct. App. 1997). The most important factor, however, is the forseeability of the economic harm to the plaintiff from the defendant's negligent conduct. Id.

Applying the above factors to KND's Complaint, KND pled sufficient facts to allege the existence of a special relationship between Bank of America and KND. First, KND alleges that, as the underwriter, the Escrow Reinvestment Agreement and the representations made by Bank of America were intended to directly affect KND. Compl. at ¶ 13; See Chaemleon Eng'r Corp. v. Air Dynamics, Inc.,161 Cal. Rptr. 463, 465 (Cal. Ct. App. 1980) (finding that the defendant's failure to supply an essential component to the plaintiff, which resulted in the plaintiff's failure to meet its obligations, subjected the defendant to liability for negligent interference with

MEMORANDUM OF POINTS AND AUTHORITIES

prospective economic advantage). Second, in the Complaint, KND alleges that Bank of America could reasonably have foreseen that the misrepresentations made in the Letter of Acceptance would harm KND's economic relationships. Compl. at ¶ 58; See N. Am. Chem. Co., 59 Cal. App. 4th at 787 (noting that damages that result from the failure to perform as required are foreseeable). Third, there is no doubt that KND alleged that it suffered an injury as a result of Bank of America's misrepresentation. Compl. at ¶¶ 30, 31, 32 40, 62. Fourth, KND adequately alleged that the harm to its economic advantage was the direct result of the misrepresentations made by Bank of America. Id. at ¶ 62. Fifth, KND's Complaint asserts the moral blame attached to Bank of America's conduct by pointing out that senior employees from Bank of America have pled guilty to criminal charges associated with the bid-rigging scheme. Id. at ¶ 59. Sixth, public policy surely supports a finding of a duty of care to prevent big-rigging in the municipal bond markets. Accordingly, KND has pled facts sufficient to allege that Bank of America owed KND a duty of care arising from their special relationship.

KND pled sufficient factual content about Bank of America's failure to act with due care to support its claim that Bank of America negligently interfered with its prospective economic advantage. In fact, the Complaint specifically alleges that Bank of America failed to act with due care. Compl. at ¶ 60. Numerous non-conclusory, fact-based assertions that Bank of America failed to act with due care by knowingly misrepresenting that it determined the bid price without regard to a formal or informal agreement and that it only paid CDR $10,000 supports this allegation. Id. at ¶¶ 12-15, 45, 59, 60. Additionally, KND makes numerous non-conclusory, fact-based assertions that Bank of America failed to act with due care when it concealed that it received a "last look" at the bids of its competitors and that it paid CDR amounts greater than $10,000. Id. at ¶¶ 12, 13, 14. To further support its claim that Bank of America failed to act with due care, KND asserted that a former employee of Bank of America pled guilty to criminal charges related to bid-rigging in the municipal bond markets and that Bank of America entered into a settlement agreement with the SEC, the IRS, the Office Comptroller General, and several State Attorney Generals for its conduct in the municipal bond markets. Id. at ¶¶ 26, 27. Accordingly, KND pled sufficient facts regarding Bank of America's failure to act with due care

MEMORANDUM OF POINTS AND
AUTHORITIES

to supports its claim.

    **4.**     **KND's Complaint Stated Sufficient Facts to Allege that Bank of America's Negligence Caused the Interference With KND's Business Relationships**

As stated in the Complaint, Bank of America intended to affect KND's actions by making false representations about the bid Bank of America submitted, as well as falsely representing that it determined its bid price without regard to a formal or informal agreement. Compl. at ¶¶ 12, 13, 14. Likewise, KND asserts that the harm caused by Bank of America's actions to KND's existing relationships was foreseeable. Id. at ¶ 57. As alleged by KND in its Complaint, Bank of America knew that it made false representations in its Letter of Acceptance, as Bank of America determined its bid price through an agreement with CDR, which granted Bank of America a "last look" at the competing bids. Id. at ¶ 10, 34. Additionally, in its Complaint, KND asserted that the resultant economic harm from Bank of America's breach of its duty of care was foreseeable. Id. at ¶ 58, 59. In fact, senior employees from Bank of America have recognized the wrongfulness and the harm resulting from its bidding practices in the municipal bond markets and have pled guilty to conspiracy and fraud. Id. at ¶ 60. Furthermore, KND's economic harm is closely connected to Bank of America's wrongful conduct, as KND's damages flow directly from Bank of America's misrepresentation that it determined its bid price without regard to any other formal or informal agreement. After receiving this representation, KND reasonably relied on Bank of America's false representations when it made its certification to the school districts' bond counsel. Ultimately, it was KND's certification to bond counsel that forced it into settlement with the IRS. Id. at ¶ 9, 31. Thus, KND alleged sufficient facts to plausibly suggest that Bank of America is liable for negligent interference with KND's prospective economic advantage.

**E.**    **BANK OF AMERICA'S VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")**

KND will not address Bank of America's allegations with respect to KND's RICO count, as KND is seeking dismissal of this count without prejudice.

# IV. **CONCLUSION**

For the foregoing reasons, KND respectfully submits that Bank of America's Motion to Dismiss KND's Complaint for failure to state a claim for which relief can be granted should be denied.

Respectfully submitted,

Dated: August 23, 2011                          Watt, Tieder, Hoffar & Fitzgerald, L.L.P.


By: /s/ David E. Nemeth
       David E. Nemeth
       Yanna J. Li
       Attorneys for Plaintiff
       KINSELL, NEWCOMB & DE DIOS, INC

IRVINE 169172.1 102925.002

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND
AUTHORITIES